IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHRISTIANA CARE HEALTH SERVICES INC., | § § § | No. 58, 2019 |
| Defendant-Petitioner Below, Appellant, | § § § § | Court Below: Superior Court of the State of Delaware |
| v. | § § § | C.A. No. N17C-05-353 |
| MEEGHAN CARTER Individually and as Administratrix of the Estate of MARGARET RACKERBY FLINT, Decedent, | § § § § § § | |
| Plaintiffs-Respondents Below, Appellees. | § § | |

Submitted: September 18, 2019
Decided: December 2, 2019

Before **SEITZ**, Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.


Upon appeal from the Superior Court. **REVERSED**.

Richard Galperin, Esquire, Joshua H. Meyeroff, Esquire (*Argued*), and Ryan T. Keating, Esquire, Morris James LLP, for Appellant, Christiana Care Health Services, Inc.

Leroy A. Tice, Esquire (*Argued*), Leroy A. Tice, Esquire P.A., for Appellees Meeghan Carter Individually and as Administratix of the Estate of Margaret Rackerby Flint.

**VAUGHN**, Justice:

## FACTS AND PROCEDURAL HISTORY

This is an interlocutory appeal in a medical negligence case. The appellant, Christiana Care Health Services, Inc. ("CCHS") claims that the Superior Court erred by denying its motion for partial summary judgment. The alleged medical negligence occurred during surgery performed on Margaret Rackerby Flint at Christiana Care Hospital, which is operated by CCHS. The surgery allegedly caused her death two days later. The complaint was filed by Meeghan Carter, Ms. Flint's daughter, individually and as administratrix of Ms. Flint's estate. It named as defendants Dr. Michael Principe, who performed the surgery, Dr. Eric Johnson, who assisted him, and CCHS. Later, the medical practices of the two doctors were added as defendants. The sole claim against CCHS is that the two doctors were its agents and it is vicariously liable for their alleged negligence.

A mediation resulted in settlement of all the plaintiff's claims against Dr. Principe and his medical practice. As part of that settlement, the plaintiff signed a release which released all such claims. CCHS was not a party to the settlement or the release. Following that settlement, CCHS filed its motion for partial summary judgment against the plaintiff on the theory that the release of Dr. Principe released it from any vicarious liability for Dr. Principe's alleged negligence. The Superior Court denied the motion.

2

CCHS raises two issues on appeal. First, it contends that the release of an agent releases a vicarious liability claim against the principal as a matter of law. Second, and apart from its first contention, it contends that the terms of the release which the plaintiff signed when she settled with Dr. Principe and his medical practice also released it from liability for Dr. Principe's conduct. We agree with CCHS's second contention. For the reasons which follow, the written release operated as a complete satisfaction of the plaintiff's vicarious liability claim against CCHS arising from Dr. Principe's alleged conduct, and the motion for partial summary judgment should have been granted.

Shortly after CCHS filed the motion for partial summary judgement which is at issue in this appeal, the plaintiff and Dr. Johnson stipulated that all of the plaintiff's claims against him, his medical practice, and the vicarious liability claim against CCHS based on his alleged negligence, were dismissed. Therefore, when the Superior Court decided CCHS's motion for partial summary judgment, the only remaining claim was the plaintiff's vicarious liability claim against CCHS based on Dr. Principe's alleged negligence.

In denying CCHS's motion for partial summary judgment, the Superior Court reasoned that:

> The Court finds that CCHS is a joint tortfeasor, as defined under the [Uniform Contribution Among Tortfeasors Act ("UCATA")]. Pursuant to Section 6304[a], the Joint Tortfeasor Release does not operate to exclude the

3

possibility of CCHS's vicarious liability.  CCHS is not a party to the Release, and the Release does not prohibit Plaintiffs from proceeding against CCHS.  There is no basis in Delaware's UCATA or Delaware common law for finding as a matter of law that the release of a joint tortfeasor discharges the vicarious liability of a joint tortfeasor who was neither a party nor explicitly listed in the release.[1]

## DISCUSSION

This Court "review[s] the Superior Court's decision on a motion for summary judgment *de novo*."[2]  In making this inquiry, we "determine 'whether the record shows that there is no genuine material issue of fact and the moving party is entitled to judgment as a matter of law.'"[3]  If material facts are in dispute, a motion for summary judgment should not be granted.[4]

The release signed by the plaintiff when she settled with Dr. Principe and his medical practice was entitled Joint Tortfeasor Release.  It includes the following provision:

> This release is intended to protect the Releasees from any further exposure or future liability from any claim relating in any way to the medical care described herein and in the Complaint filed in the above referenced lawsuit.  This Release is executed in conformity with the provisions of 10 Del. C. §6301, et seq. the Uniform Contribution Among Tortfeasors Act, and shall be governed by Delaware law.  Accordingly, should it be determined that any person or

---

[1] *Carter v. Principe*, 2019 WL 193138, at *2 (Del. Super. Jan. 15, 2019).
[2] *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009).
[3] *Id.* (quoting *Berns v. Doan*, 961 A.2d 506, 510 (Del. 2008) (citation omitted)).
[4] *Id.*

entity not released herein is jointly or severally liable with the Releasees, to the Releasors in tort or otherwise, the claims against and damages recoverable from such other person or entity shall be reduced by the greater of Releasees' *pro rata* share of liability or responsibility for such damages or the sum of $1,000,000, and this release shall operate as a satisfaction of those claims against such other parties to that extent.[5]

The purpose of this provision is to protect the releasees from claims from other parties for contribution or indemnity by reducing the plaintiff's claims against such other parties by the releasees' *pro rata,* meaning proportionate, share of the plaintiff's total damages.

The application of the plain and unambiguous language of this provision in this case leads to the conclusion that the release extinguishes the plaintiff's claim against CCHS. CCHS is an "entity not released herein" which is, at least, "severally liable with [Dr. Principe] to [the plaintiff] in tort or otherwise."[6] The provision reduces the plaintiff's claim against CCHS by "the greater of [Dr. Principe's] *pro rata* share of liability or responsibility for such damages or the sum of $1,000,000 and operate[s] as a satisfaction of those claims . . . to that extent." In the context of a vicariously liable principal, the agent's *pro rata* share of responsibility for the

---

[5] App. to Appellees' Answering Br. at B351.

[6] *See Blackshear v. Clark*, 391 A.2d 747, 748 (Del. 1978) (reasoning that a doctor and his employer were "(at least) 'severally' liable for the same injury to plaintiff" where the employer's liability was "derived solely from" the doctor's alleged negligence).

plaintiff's damages is the entire amount of those damages.[7] Since the release provides that the plaintiff's claim is reduced by "the greater" of Dr. Principe's *pro rata* share of responsibility, whatever that amount may be, or $1,000,000, the release reduces the plaintiff's claim against CCHS by the entire amount of plaintiff's damages. The release, therefore, completely exhausts any damages that could be asserted against CCHS and operates as a full satisfaction of the plaintiff's claim against CCHS.

The plaintiff makes a number of contentions as to why CCHS's liability is not identical to Dr. Principe's, primarily to the effect that CCHS made statements in the trial court which are inconsistent with the claims it has made on appeal. The plaintiff's contentions are not persuasive and we reject them.

Since we find the terms of the release to be case dispositive, we need not address the appellant's first contention.

The judgment of the Superior Court is reversed.

---

[7] This principle is inherent from the ability of a vicariously liable principal to seek indemnification from an agent for liability the principal incurs as a result of the agent's wrongdoings. *See* RESTATEMENT (SECOND) OF TORTS, § 886B(1)-(2)(a) (1979). Indemnification operates to fully shift the loss from the party incurring it (i.e., the principal held vicariously liable to an injured party) to the party whose negligence was "the primary cause of the injured party's harm" (i.e. the agent whose wrongdoing harmed the third party). 41 AM. JUR. 2D INDEMNITY § 3 (1968); *see id.* at § 1 ("Stated simply, indemnity is an obligation by one party to make another whole for a loss that the other party has incurred. . . . Indemnity in its most basic sense means reimbursement and may lie when one party discharges a liability which another rightfully should have assumed, and it is based on the principle that everyone is responsible for his or her own wrongdoing, and if another person has been compelled to pay a judgment which ought to have been paid by the wrongdoer, then the loss should be shifted to the party whose negligence or tortious act caused the loss." (footnote omitted)).